I JAMES L. CANNELLA, Judge.
Plaintiff, Donald O. Goodlow (Goodlow), appeals from the trial court judgment af *298 firming the decision of the Louisiana Motor Vehicle Commission (LMVC) to deny his application for a new motor vehicle salesman license. For the reasons which follow, we affirm.
Goodlow has been in the automobile sales business since 1981. In 1997, Good-low and Doug Gehrig (Gehrig), who had some experience in the automobile dealership business, formed a corporation named DD Group, Inc. (DD) to operate an automobile dealership. Goodlow and Gehrig each owned 50% of the stock of DD. In 1997, DD purchased a car dealership in Bunkie, Louisiana and named it Central Ford. Prior to that time, Goodlow had never owned, operated, managed the cash flow or collected on accounts receivable of an automobile dealership. In 1997, DD showed a $50,000 to $60,000 loss. By May of 1998, DD showed a $40,000 to $50,000 profit. At about that time, Gehrig began another business and did not continue the day to day onsite supervision of DD. Cash flow "problems started. In an attempt to generate additional revenue, Goodlow entered into a conditional Buy-Sell Agreement and Management Agreement with another [3automobile dealership, Ryland Dodge-Chrysler, Inc. (Ry-land). This agreement was ratified by Gehrig. The agreement permitted DD to manage Ryland pending Chrysler Corporation’s approval of the sale and issuance of a franchise to DD. However, Chrysler Corporation did not grant the franchise. Moreover, the arrangement did not generate the anticipated revenue for DD, but rather, plunged it further into debt. In October of 2000, DD was approximately $700,000 in debt and Gehrig fired Good-low.
Since October of 2000, DD has satisfied all of its outstanding obligations. Goodlow declared personal bankruptcy. Goodlow settled with Gehrig, entering into a consent judgment. DD is still doing business as Central Ford.
On June 1, 2001, Goodlow went to work at United Auto Dodge of Shreveport as the Director of Sales and Sales Development on a commission basis. On June 22, 2001, Goodlow applied to the LMVC for a new motor vehicle salesman license.
On June 29, 2001, the LMVC denied Goodlow’s application for a license as a salesman for a new motor vehicle dealership. On July 9, 2001, Goodlow and United Auto Dodge requested a license review hearing before the LMVC. On July 26, 2001, the LMVC issued a Notice of Hearing citing applicable parts of La. R.S. 32:1255, on the denial of licenses, and certain incidents that established the violations of the statute, as follows:
LSA-R.S. 32:1255. Denial, revocation, imposition of a civil penalty, or suspension of license; grounds
The commission may, in addition to imposing a civil penalty under the provisions of this Chapter, deny an application for a license, or revoke or suspend a license after it has been granted for any of the following reasons:
(1) On satisfactory proof of unfitness of the applicant or the licensee, as the case may be, under the standards established and set out in this Chapter.
14(2) For fraud practiced or any material misstatement made by an applicant in any application for the license under the provisions of this Chapter.
(6) For any violation of any law relating to the sale, lease or rental, distribution or financing of motor vehicles.
(7) Upon a find that, considering the matters set forth in the applicable paragraphs of Subsections A through J of Section 1254, the public interest is not served by the issuance of license *299 sought or continuance of the license previously granted.
The following incidents are cited as violations of the above-mentioned statutes.
(1) Failed to pay sales taxes and registration fees to the State of Louisiana while dealer-operator and owner of DD Group, Inc. DBA Central Ford.
(2) Submitted checks to the State of Louisiana which were returned for insufficient funds while dealer-operator and owner of DD Group, Inc. DBA Central Ford.
(3) Failed to pay off loans on cars traded-in to DD Group, Inc. DBA Central Ford while dealer-operator and owner.
(4) Stopped payment on checks to General Motors Acceptance Corporation for payoff of automobiles after GMAC released all loan documents and title transfers to DD Group, Inc. DBA Central Ford while dealer-operator and owner.
(5) Operated Ryland Dodge-Chrysler, Inc. under the name Central Dodge-Chrysler-Plymouth-Jeep without obtaining franchises and new motor vehicle dealer and salesman licenses.
(6) Advertised as Central Dodge-Chrysler-Plymouth-Jeep without being properly licensed as such.
On August 13, 2001, a hearing was held at which several witnesses testified but no exhibits were introduced by the LMVC. Goodlow introduced two exhibits, An Act of Assignment of Agreement to Buy and Sell and his Bankruptcy Court records. At the conclusion of the hearing, the LMVC voted 5-2 to deny Goodlow his salesman license. The LMVC issued Findings of Fact that the six incidents of violations referenced in the Notice of Hearing had been proven. Conclusions of Law stated:
1. The Commission has presented satisfactory proof of the unfitness of Mr. Donald 0. Goodlow to receive a salesman’s license.
2. The Salesman’s license applied for by Donald O. Goodlow is denied.
|sOn October 25, 2001, Goodlow filed a Petition for Judicial Review, appealing the LMVC judgment. Argument before the trial court was conducted on December 20, 2001. At the conclusion of the hearing, the trial court affirmed the decision of the LMVC. It is from this ruling that Goodlow appeals.
On appeal, Goodlow assigns eight errors. The first six can be consolidated into LMVC failing to prove the statutory violations by Goodlow “individually.” We find no merit in this argument.
The incidents of violations cited by the LMVC were not incidents of Goodlow’s “individual” actions per se, but were evidence of statutory violations that he committed as the “dealer-operator” of DD. The record amply supports these findings. Gehrig testified that he was not handling the daily operations of the business during that time and that he had left Goodlow in charge. Goodlow was the dealer-operator of the business and the statutes regulate the actions of the dealer-operator. Moreover, Goodlow testified at the hearing and admitted to being the person in charge of the company at the time of the violations and the one who performed the actions in question, although he testified that the actions were not intentional but were necessitated by the cash flow problems of the company.
Goodlow’s fundamental argument on appeal is that the action of the LMVC in denying his salesman license was arbitrary and capricious and an abuse of discretion.
La. R.S. 32:1255 allows the LMVC to deny an application for a license “On satis *300 factory proof of unfitness of the applicant or the licensee.” La. R..S. 32:1254(B), on application for licenses, provides in pertinent part:
B. In determining whether or not to issue a license to any applicant, the'commission shall consider the information provided above, the declaration of public policy set forth in Section 1251, as well as all of the following:
(1) Financial standing and business integrity of the applicant.
|fi(2) Ability of the applicant to conduct properly the business for which a license is sought.
(3) Adequacy of the applicant’s established place of business for the purpose for which a license is sought.
(4) Effect on the retail motor vehicle business and the consuming public in the community or territory and the state of Louisiana.
(5) Effect on the motor vehicle leasing/rental business and the consuming public in the state of Louisiana.
La. R.S. 32:1251, the Declaration of Public Policy, provides in pertinent part:
The legislature finds and declares that the distribution and sale of motor vehicles in the state of Louisiana vitally affects the general economy of the state, the public interest, and the public welfare. ...
In considering the declared public policy of the state, as well as the prescribed statutory factors, and the evidence of Goodlow’s activities as a dealer-operator governed by these provisions, the LMVC found that there was satisfactory proof of the unfitness of Goodlow to receive a salesman’s license.
The legislature, through its declaration of public policy, has declared that the regulation of automobile sales is of vital public interest to this state and its citizens. One of the factors to be considered in licensing, among many others, is the applicant’s financial standing and business integrity. The record in this case evidences violations by Goodlow of the rules and regulations set out in the applicable Chapter, La. R.S. 32:1251 et seq., when DD encountered financial difficulty. These actions included non-payment of state taxes, company checks returned due to insufficient funds, stop payment orders on company checks and failure to timely pay amounts due to creditors. There was testimony that by the end of the approximate three year period, DD was in debt over $700,000. Based on the record before us, we do not find that the action taken by the LMVC was arbitrary and capricious or an abuse of discretion and, to the contrary, we find that |7the record amply supports the LMVC’s decision to deny Goodlow the salesman license.
Accordingly, for the reasons set forth above, we affirm the judgment of the trial court which affirmed the decision of the LMVC to deny Goodlow his salesman’s license for new motor vehicles. Costs of appeal are assessed against Goodlow.
AFFIRMED.